IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| GENE DANIEL MORRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:16cv264 |
| ) | |
| NANCY A. BERRYHILL[1], ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Gene Daniel Morris ("Morris") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381-1383f. Morris alleges that the Administrative Law Judge ("ALJ") erred by improperly assessing his residual functional capacity ("RFC") and credibility. I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND DENYING** Morris's Motion for Summary Judgment (Dkt. No.13) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 15).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Morris failed to demonstrate that he was disabled

---

[1] Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this suit.

under the Act.² <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Morris protectively filed for SSI on October 22, 2012, claiming that his disability began on October 22, 2011 due to heart disease. R. 34, 61–62. The state agency denied Morris's applications at the initial and reconsideration levels of review. R. 73–75, 85–87. On November 12, 2014, ALJ Stephen A. De Monbreum held a hearing to consider Morris's claims for SSI. R. 27–50. Counsel represented Morris at the hearing, which included testimony from vocational expert ("VE") Mark Heilman. <u>Id</u>.

On January 30, 2015, the ALJ entered his decision analyzing Morris's claim under the familiar five-step process³ and denying his claim for benefits. R. 12–23. The ALJ found that

---

² The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. <u>See</u> 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

³ The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. <u>Johnson v. Barnhart</u>, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); <u>Taylor v. Weinberger</u>, 512 F.2d 664, 666 (4th Cir. 1975).

Morris suffered from the severe impairments of obesity, coronary artery disease with a history of surgical stents, and a history of ST elevation with myocardial infarction ("STEMI" - heart attack). R. 14. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 15.

The ALJ further found that Morris retained the RFC to perform a range of light work such that he can lift/carry 10 pounds frequently and 20 pounds occasionally, stand/walk for 6 hours in a normal 8-hour work day, occasionally climb ramps and stairs, but would be precluded from climbing ropes, ladders and scaffolds. R. 16. The ALJ found Morris had no limitations with regards to balancing, kneeling, crawling, crouching and stooping and would be precluded from work involving exposure to hazards, such as dangerous machinery and unprotected heights. Id.

The ALJ determined that Morris was precluded from performing his past relevant work, but could perform jobs that exist in significant numbers in the national economy, such as ticket taker, cashier, small products assembler, final assembler, printed circuit board touch up screener and call our operator. R. 22. Thus, the ALJ concluded that Morris was not disabled. Id. Morris appealed the ALJ's decision, and the Appeals Council denied his request for review on April, 21 2016. R. 1–3.

## ANALYSIS

### A. Medical History

On January 30, 2011, Morris went to the hospital for chest pain. R. 212. Morris had a higher coronary risk factor than the average person based on his total cholesterol levels and HDL ratio. R. 241. He was informed he could return to work within one or two weeks upon discharge from the hospital. R. 231. Morris received treatment again for chest pain on August 17, 2011,

when he was admitted to the hospital with ST elevation myocardial infarction ("STEMI" - heart attack). R. 255–256. An echocardiogram showed normal left ventricular systolic function with an ejection fraction of 60-65% and trace mitral regurgitation. R. 268–269. Morris was discharged after three days, told to quit smoking and reminded about the importance of medication compliance. R. 259–260, 273, 275, 279. On October 23, 2011, Morris was admitted to the hospital with a primary diagnosis of STEMI and secondary diagnosis of pain medication seeking behavior. R. 326, 328. The treatment notes reflect that Morris failed to follow up with his physician after his last discharge and that he should have a drug screen with his next admission. R. 342. Less than a month later, on November 15, 2011, Plaintiff returned to the hospital complaining of chest pain and a headache and requesting pain medication. R. 384, 387. Testing showed no new segmental ischemia with wall motion abnormalities consistent with the previous infarction or chronic ischemia. R. 388.

On December 12, 2011, Morris saw cardiologist M. Ayoub Mirza, M.D. R. 438. Dr. Mirza determined that Morris was doing well post STEMI and had only occasional atypical chest pain and no exertional chest pain. R. 436. Morris's blood pressure was high, but Dr. Mirza told Morris he did not need to return to the clinic for six months. R. 438. Five months later, on May 19, 2012, Morris presented to the emergency room complaining of chest and dental pain. R. 465. Against medical advice, Morris left before he could be fully examined. R. 481. Lab results showed his enzymes to be negative. R. 503.

Morris returned to the emergency room on February 24, 2013, complaining about chest pain. R. 527. He was diagnosed with an acute STEMI and underwent a heart catheterization. R. 533, 534. He was discharged four days later, and treatment notes state Morris's hypertension was well controlled and his leukocystosis was resolved. R. 534. Morris was again counseled to

exercise, quit smoking, and take his medications. R. 534. He was working as a handyman at this time. R. 562.

On May 3, 2013, state agency physician Robert Keeley, M.D., reviewed Morris's records and concluded that Morris could perform a range of light work, where he could lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 6 hours in an 8-hour day, and sit for 6 hours in an 8-hour day. R. 56. On July 10, 2013, Morris went to the cardiology clinic at Carilion where he reported no chest pain and stated he was compliant with his medication. R. 626. He was still suffering from coronary artery disease, hyperlipidemia, hypertension, hyperkalemia and STEMI and was directed to return to the clinic in six months. R. 629, 670. His records from this visit show left ventricular ejection fraction findings of 55-60%, which is in the normal range, and Morris reported he walked for exercise without ill effect. R. 674, 668.

In September 2013, state agency physician Brian Strain, M.D., reviewed Morris's records and also concluded he could perform light work, subject to the same limitations found by Dr. Keeley. R. 68–69. In January 2014, Morris returned to the emergency room and underwent a cardiac catheterization. R. 637–638. It was determined that Morris had no recurrent angina and a vascular study was unremarkable for pseudoaneurysm. R. 637.

On May 14, 2014, Morris saw Steven Goldstein, M.D., for treatment of his cardiac issues. R. 634. Morris had no chest pain or shortness of pain at this visit, and he reported he walked a quarter a mile per day for exercise. R. 634. Examinations revealed Morris was alert and oriented with a regular heart rate and rhythm, without a gallup, murmur or rub. R. 635. Dr. Goldstein noted Morris's history of coronary artery disease, hypertension, hyperlipidemia and tobacco use. Id. Morris wanted to return to work as a pipe fitter, but Dr. Goldstein told him he

5

could not approve this without a treadmill stress test. Morris could not afford this test at that time, and Dr. Goldstein instructed Morris to return in two to three months. R. 635–636. Morris then returned to Dr. Goldstein on July 15, 2014 and cardiac exams again revealed a regular rate and rhythm, with no gallup, murmur or rub. R. 632. His blood pressure was elevated, but Morris denied chest pain or shortness of breath. R. 632.

## B. RFC

Morris argues that the ALJ's RFC is not supported by substantial evidence. He argues the ALJ failed to perform a function-by-function analysis under Social Security Ruling ("SSR") 96-8P[4] and consequently failed to pose proper hypothetical questions to the vocational expert. Pl. Br. Summ. J. p. 12; see Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 U.S. Dist. LEXIS 153878, at *23, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 U.S. Dist. LEXIS 115150, at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S. Dist. LEXIS 132972, at *15–16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)

---

[4] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

6

(emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

Here, the ALJ's discussion of Morris's limitations satisfies the requirements of SSR 96-8P. The ALJ considered both medical and non-medical evidence in assessing Morris's RFC and provided the narrative discussion required by the regulations. Specifically, the ALJ considered Morris's cardiac treatment, including his cardiac treatments and hospitalizations (R. 20), his "general" noncompliance with treatment recommendations (R. 17) and the objective medical record for the relevant time frame. R. 17–20. As the ALJ notes, records show "fairly conservative" treatment, with recent records from Morris's visit with Dr. Goldstein showing "generally negative findings" and a request from Morris to return to work as a pipe fitter. R. 20. Although Dr. Goldstein did not release Morris to work as a pipe fitter, he did so because Morris was unable to undergo further cardiac testing, and as the ALJ states: "His [Dr. Goldstein's] refusal to release the claimant for work could be viewed as a way to force the claimant to undergo the recommended cardiac testing. Also, as the claimant wanted to return to work as a pipefitter, Dr. Goldstein's refusal to release the claimant is understandable, even without the testing. That work was classified at the heavy level of exertion by the vocational expert." R. 20.

The ALJ also considered Morris's testimony as to his daily activities. The ALJ noted that "while the claimant complains of extreme fatigue, constant use of prescribed Nitroglycerin with headaches afterward, chest pain, shortness of breath on exertion, and ongoing cardiac related symptomology, his cardiac treatment records show left ventricular ejection fraction findings of 55-60%, in the normal range; and that the claimant reported walking for exercis[e]." R. 20.

7

Additionally, the ALJ stated: "…in May 2014, the claimant stated he wanted to return to work as a pipefitter, which the vocational expert opined would be performed at the heavy exertional level.  This is inconsistent with the symptoms he alleges that preclude such work." R. 20.

The ALJ considered the medical opinions, claimant's testimony, and objective record and explained the basis for his ruling.  Thus, the court is capable of meaningfully reviewing the RFC.  See Taylor v. Astrue, No. 11-cv-32, 2012 U.S. Dist. LEXIS 11307, at *17, 2012 WL 294532, at *6 (D. Md. Jan. 31, 2012) (noting that while SSR 96-8 requires an ALJ to consider the evidence presented on a function-by-function basis, it does not require the ALJ to produce such a detailed statement in writing, but rather is sufficient if it includes a narrative discussion of the claimant's symptoms and medical source opinions); see also Monroe, 826 F.3d at 189 (4th Cir. 2016) (emphasis added) (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)) (finding that "[a] necessary *predicate* to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.").  Substantial evidence supports the ALJ's RFC finding.

Further, since the ALJ's RFC finding should be affirmed, the ALJ did not err when presenting a hypothetical scenario based on Morris's established limitations.  See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005) (holding that hypothetical questions are adequate if they reflect a RFC for which the ALJ had substantial evidence).  It is not the Court's role to weigh the conflicting evidence or substitute its judgment for that of the ALJ.  Substantial evidence supports the decision and it should be affirmed.

**C. Credibility**

Morris argues that the ALJ's credibility[5] findings are not supported by substantial evidence. Morris asserts that the ALJ erred when he "never" gave "specific reasons for his credibility finding." Pl. Br. Summ. J. p. 14.

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Morris's subjective allegations of his disabling symptoms and impairments are not conclusive on their own; rather, subjective complaints and statements of symptoms, like all other evidence of disability, are considered in the context of the record as a whole. 20 C.F.R. §§ 404.1529, 416.929 (2014). If a claimant's statements are inconsistent with other evidence, the ALJ may find them less than fully credible and weigh them accordingly. See SSR 96-4P, (July 2, 1996); SSR 96-7P, (July 2, 1996).

In this case, the ALJ found that Morris's statements regarding the severity of his limitations were not wholly credible because they were not supported by the objective medical evidence, his treatment history, his work history and his daily activities. R. 17–20. The ALJ's

---

[5] In March 2016, the Social Security Administration superseded its policy on assessing the credibility of a claimant's statements, and ruled that "credibility" is not appropriate terminology to be used in determining benefits. See SSR 16–3p, 2016 WL 1119029 (S.S.A. Mar. 16, 2016) (effective March 28, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." SSR 16–3p at *1. "In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16–3p, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.

Here, SSR 16–3p was issued long after the ALJ's consideration of Morris's claim, and both the ALJ's opinion and the parties' briefs speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision based on the provisions of SSR 96–7p, which required assessment of the claimant's credibility." See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); Ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 (S.D.W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 (M.D.N.C. Apr. 22, 2016).

However, I note that the methodology required by both SSR 16–3p and SSR 96–7p are quite similar. Under either, the ALJ is required to consider Morris's report of his own symptoms against the backdrop of the entire case record; in SSR 96–7p, this resulted in a "credibility" analysis, in SSR 16–3p, this allows the adjudicator to evaluate "consistency."

opinion includes a detailed consideration of Morris's medical history along with Morris's own allegations. After a review of Morris's treatment records and allegations of disability, the ALJ stated:

> [I] find that [Morris's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Morris's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision…Furthermore, a review of the claimant's work history shows that the claimant worked only sporadically prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments. Also of note, there is evidence that the claimant stopped working for reasons not related to the allegedly disabling impairments. The claimant reported he ceased working in October 2008, due to a company lay off, he does not allege disability until three years later in October 2011 (Exhibit 2E).

R. 17. The ALJ outlined his reasons for this determination, including that Morris's "overall treatment has been fairly conservative" and that the RFC "is supported by some of the claimant's own allegations." R. 20. The ALJ also notes that while Morris "complains of extreme fatigue, constant use of prescribed Nitroglycerin with headaches afterwards, chest pain, shortness of breath on exertion, and ongoing cardiac related symptomology, his cardiac treatment records show left ventricular ejection fraction findings of 55-60% in the normal range; and that the claimant reported walking for exercis[e] (Exhibit 10F)." The ALJ further states: "The claimant says he suffers with angina/chest pain and shortness of breath/dyspnea, however medical records indicate he generally denied angina, orthopnea, lower extremity edema, syncope, palpitations, claudification, or dyspnea symptoms during more recent medical examinations (Exhibit 10F/5)." R. 20. Morris also requested to return to work as a pipefitter as late as 2014, which is classified as heavy exertional work. R. 20. As the ALJ explains, such a request is "inconsistent with the symptoms he alleges that preclude such work." Id.

Morris's argument is merely an invitation to re-weigh the evidence and conclude that Morris suffers from impairments which more severely limit his functional capacity than the RFC found by the ALJ. Morris's argument misses the review function of this court – whether substantial evidence supports the ALJ's determination. Here, the ALJ carefully and comprehensively analyzed the medical evidence. It is the ALJ's province to weigh the evidence, determine how to handle conflicting evidence, and reach a conclusion of whether Morris is disabled. The ALJ in this case fulfilled his duties and substantial evidence supports the RFC determination and the conclusions as to Morris's credibility. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

## CONCLUSION

For the reasons set forth above, I recommend that Morris's motion for summary judgment be **DENIED**, and the Commissioner's motion for summary judgment be **GRANTED**.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Entered: July 31, 2017

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge